PINKERTON'S INC., Appellant–
Defendant,

v.

Rita A. FERGUSON, Appellee–
Plaintiff.

No. 48A04–0407–CV–364.

Court of Appeals of Indiana.

April 4, 2005.

Rehearing Denied June 3, 2005.

⚷393

Mark D. Gerth, Kightlinger & Gray, LLP, Indianapolis, IN, Attorney for Appellant.

Patrick R. Ragains, Smith & Ragains, Anderson, IN, Attorney for Appellee.

## OPINION

VAIDIK, Judge.

### Case Summary

Pinkerton's, Inc., appeals the trial court's declaratory judgment, which concluded that Pinkerton's was not entitled to a worker's compensation lien on proceeds paid to Rita Ferguson under the uninsured motorist provision of her personal automobile insurance policy and that Pinkerton's liability to provide worker's compensation benefits was not terminated by Ferguson's receipt of those proceeds. Because we find that it would contravene public policy to permit Pinkerton's to assert a lien on Ferguson's insurance proceeds and that termination of benefits is not appropriate where claims against the third-party tortfeasor have not been extinguished by collecting proceeds under a personal insurance policy, we affirm.

### Facts and Procedural History

Ferguson was injured in an automobile collision, which occurred during the course and within the scope of her employment with Pinkerton's. Consequently, Ferguson received worker's compensation and medical benefits from Pinkerton's. In all, Pinkerton's paid $321,308.33 for medical services rendered to Ferguson and $8,057.42 in temporary total disability benefits. As a result of the collision, Ferguson sustained a forty percent loss of use of her whole person, and her projected total damages were estimated to be in excess of one million dollars.

The driver who caused the collision, Daniel Sims, had no insurance coverage. Ferguson, however, was covered by a per-

sonal insurance policy issued in her husband's name. The Fergusons' policy included uninsured motorist coverage with a limitation of $50,000 per person. Ferguson entered into a settlement with her insurer for the uninsured motorist policy limits. Ferguson and Pinkerton's were unable to reach an agreement as to whether and to what extent Pinkerton's may be entitled to receive a portion of the uninsured motorist proceeds recovered by Ferguson. Thus, Ferguson filed a complaint for declaratory relief. The trial court determined:

> The Plaintiff, Rita · A. Ferguson is awarded the proceeds of the uninsured motorist policy in the sum of $50,000.00 less costs and attorney fees payable to Smith and Ragains, and the Court further specifically finds as a matter· of [law] that she is not precluded from ... further recovery under her Worker's Compensation claim because of this Court's [D]eclaratory Judgment in her favor. .

Appellant's App. p. 23. Pinkerton's now appeals.

### Discussion and Decision

■ Pinkerton's argues that it is entitled to a lien on uninsured coverage proceeds recovered from Ferguson's personal automobile insurance policy. When a trial court enters special findings, as is the case here, we review issues of fact for sufficiency of the evidence and look to the record only for evidence favorable to the judgment. Ind. Trial Rule 52; *City of Fort Wayne v. Certain Southwest Annexation Area Landowners,* 764 N.E.2d 221, 224 (Ind.2002), *reh'g denied.* We do not set aside findings and judgments unless they are clearly erroneous. T.R. 52. We review questions of law de novo. *City of Fort Wayne,* 764 N.E.2d at 224.

■ Pertinent to this appeal is the following excerpt from Indiana Code § 22–3–2–13:

> Whenever an injury or death, for which compensation is payable under chapters 2 through 6 of this article shall have been sustained under circumstances creating in *some other person* than the employer and not in the same employ a *legal liability to pay damages* in respect thereto, the injured employee ... may commence legal proceedings against the *other person* to recover damages notwithstanding the employer's or the employer's compensation insurance carrier's payment of or liability to pay compensation under chapters 2 through 6 of this article. In that case, however, if the action against the *other person* is brought by the injured employee ... and ... settlement is made with the *other person,* either with or without suit, then from the amount received by the employee ... there shall be paid to the employer or the employer's compensation insurance carrier, subject to its paying its pro-rata share of the reasonable and necessary costs and expenses of asserting the third party claim, the amount of compensation paid to the employee ... plus the medical, surgical, hospital and nurses' services and supplies ... paid by the employer or the employer's compensation insurance carrier and the liability of the employer or the employer's compensation insurance carrier to pay further compensation or other expenses shall thereupon terminate....
>
> \* \* \* \*
>
> If the injured employee ... shall agree to receive compensation from the employer or the employer's compensation insurance carrier or to accept from the employer or the employer's compensation insurance carrier, by loan or oth-

erwise, any payment on account of the compensation, or institute proceedings to recover the same, the employer or the employer's compensation insurance carrier shall have a lien upon any settlement award, judgment or fund out of which the employee might be compensated from the third party.

(emphasis supplied). Put succinctly, this statute allows an employer or its worker's compensation insurance carrier to assert a lien against proceeds due to an employee as a result of a compensable injury or death under the Worker's Compensation Act from "some other person" legally liable to pay those damages.

Pinkerton's relies primarily on *Ansert Mechanical Contractors, Inc. v. Ansert*, 690 N.E.2d 305, 310 (Ind.Ct.App.1997), in arguing its entitlement to a lien against Ferguson's uninsured motorist policy proceeds. In *Ansert*, this Court held that an employer or its worker's compensation insurance carrier may secure a lien on proceeds payable to an injured worker from underinsured motorist coverage paid for by the employer. In reaching this holding, we found that a recovery from an *employer-paid* uninsured motorist policy was a recovery from "some other person" with a legal liability to pay "damages." *Id.* at 308–09 (citing Ind.Code § 22–3–2–13). Our supreme court reiterated the *Ansert* holding in *Walkup v. Wabash National Corp.*, 702 N.E.2d 713, 715 (Ind.1998). However, our supreme court explicitly reserved the question presented today:[1] whether a worker's compensation provider can assert a lien on proceeds from an employee's personal uninsured motorist policy pursuant to Indiana Code § 22–3–2–13. We now decide that "some other person" under the Worker's Compensation

Act does not include an employee-paid uninsured motorist policy.

Pinkerton's asserts that "there is nothing in the Worker's Compensation Statute which would justif[y] drawing a distinction between uninsured motorist proceeds paid under a policy issued to an employer as opposed to a policy issued to an employee or an employee's family member." Appellant's Br. p. 4. This ignores the public policy articulated by our supreme court regarding Indiana's worker's compensation scheme:

> Workmen's compensation statutes are in derogation of the common law and provide, for those covered, an exclusive remedy for injuries sustained 'in the course of' and 'arising out of' one's employment. The basic policy behind such legislation is to shift the economic burden for employment connected injuries from the employee to the employer.
>
> 'One of the purposes of the Workmen's Compensation Act is to transfer from the worker to the industry in which he is employed and ultimately to the consuming public a greater portion of economic loss due to industrial accidents and injuries.' (authorities omitted)
>
> Workmen's compensation is for the benefit of the employee. Accordingly, it is well-established that the Act be liberally construed in favor of the employee so as to not negate the Act's humane purposes.

*Frampton v. Cent. Ind. Gas Co.*, 260 Ind. 249, 251, 297 N.E.2d 425, 427 (1973) (internal citations and footnote omitted); *see also Sims v. U.S. Fidelity & Guar. Co.*, 782 N.E.2d 345, 351 (Ind.2003) ("The basic policy underlying the [Worker's Compensation] Act was to shift the economic bur-

---

1. Specifically, our supreme court stated, "We express no opinion as to this analysis if the uninsured motorist coverage is purchased by the employee." *Walkup*, 702 N.E.2d at 715.

den for employment connected injuries from the employee to the employer[.]").

To construe the Worker's Compensation Act to permit a lien on an employee's personal uninsured motorist coverage would undermine the public policy articulated in *Frampton* and *Sims*. Stated otherwise, to rule as Pinkerton's suggests would shift part of the economic burden back from the employer or industry to the employee. *See* 6 Arthur Larson, *Larson's Workers' Compensation Law*, Ch. 110, § 110.05[8], at 110-24 (2004) ("[T]he uninsured motorist proceeds were the product of insurance paid for by the employee. There is no conceivable reason why a compensation carrier should have any claim on them."); *see also Adams v. Delmarva Power & Light Co.*, 575 A.2d 1103, 1107 (Del.1990) (determining that an employer's worker's compensation insurer is not entitled to a set-off under Delaware law for payments made to the employee by the employee's own underinsured motorist insurer because it would contravene the public policy of promoting individuals to contract for additional funds to protect themselves and their families in case of accidents with uninsured/underinsured drivers), *reh'g denied*. Such a construction undercuts the Act's humane purpose and essentially dilutes the employee's compensation benefits. *See Johnson v. Fireman's Fund Ins. Co.*, 425 So.2d 224, 229 (La.1982) (citing statutory provision that protects employees against the dilution of their compensation benefits by prohibiting direct and indirect collections from employees to reimburse the employ-

ers, their insurers, or any person for the cost of worker's compensation insurance), *reh'g denied*. Where, however, an employer . pays for the uninsured/underinsured motorist coverage, there are not these same concerns about shifting the cost of injury back to the employee and dilution of benefits. Thus, in public policy lies the justification for distinguishing between employer-paid and employee-paid uninsured/underinsured motorist coverage.

■ Moreover, the primary policy reason for allowing worker's compensation liens—to prevent double recovery, *see Waldridge v. Futurex Indus., Inc.*, 714 N.E.2d 783, 786 (Ind.Ct.App.1999), *trans. denied*—is not implicated here because Ferguson's damages far exceeded the amount she received in worker's compensation benefits, medical benefits, and uninsured motorist coverage proceeds. *See Larson's Workers' Compensation Law*, Ch. 110, § 110.05[8], at 110-23 ("There can be no conceivable policy objection to allowing an injured person to retain two recoveries that, when combined, still do not make him or her whole."). Consequently, we find that the trial court correctly determined that Pinkerton's was not entitled to a lien on Ferguson's uninsured motorist coverage proceeds.[2]

■ Pinkerton's additionally argues that by settling with her insurer for the policy limits of her uninsured motorist coverage, Ferguson terminated any further liability that Pinkerton's had to pay worker's compensation benefits to Ferguson. Section thirteen of the Worker's Compensation Act provides that if the injured employee en-

---

**2.** To the extent that Pinkerton's argues that the uninsured motorist policy is not Ferguson's personal policy because it was issued in her husband's name, we note that Ferguson raised the policy ownership issue in her posttrial brief, but Pinkerton's failed to respond to this argument until appeal. Thus, we find that Pinkerton's has waived such a challenge

by failing to lodge such an objection before the trial court. *See Mahl v. Aaron*, 809 N.E.2d 953, 958 (Ind.Ct.App.2004). Furthermore, we are not able to determine from the record whether Ferguson was a named insured under the policy as a result of her spousal relationship to her husband.

ters into a settlement and release with a third party, the liability of the employer or the employer's compensation carrier to pay further compensation terminates. *Ansert*, 690 N.E.2d at 307. We have already determined that recovery from an employee-paid uninsured motorist policy is not a recovery from "some other person" under the Worker's Compensation Act, and thus Pinkerton's is not entitled to a lien against the insurance proceeds.

Additionally, we note that as set forth in *Ansert*, "the apparent purpose behind the termination provision of section thirteen is to prevent injured employees from settling with a third party, thereby cutting off the opportunity of a worker's compensation carrier to pursue the liable party to recover any benefits it has paid." *Id.* Here, Ferguson's acceptance of the $50,000 policy limit from her uninsured motorist coverage carrier did not in any way preclude Pinkerton's from pursuing Sims in recovering any worker's compensation benefits it pays to Ferguson. *See also, e.g., Stewart v. Auto–Owners Ins. Co.*, 230 Ga.App. 265, 495 S.E.2d 882, 885 (1998) ("[P]ayments made by the insurance company under [an uninsured motorist] policy are not payments by or on behalf of the uninsured-motorist tortfeasor, and do not affect the uninsured motorist's liability to pay the damages recovered in the lawsuit against him."). Therefore, we conclude that the trial court correctly determined that, under Indiana Code § 22–3–2–13, Ferguson had not settled her claim against Sims such that her entitlement to any further worker's compensation benefits terminated.

Affirmed.

KIRSCH, C.J., and NAJAM, J., concur.